**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                           **CRIMINAL NO. 1:21-cr-48-TBM-RHWR**
                                                 **CIVIL ACTION NO. 1:23-cv-35-TBM**
**DANA DWAYNE JOHNSON**

<u>**ORDER**</u>

Dana Dwayne Johnson pleaded guilty to possession with intent to distribute 50 grams or more of methamphetamine and was ultimately sentenced to 132 months of imprisonment. Johnson has an extensive criminal history with twelve prior convictions—five of which involved possession of illegal substances and the remaining seven involved convictions such as possession of firearms, assault, domestic violence, and contempt of court—which resulted in a criminal history category of a V.

Now, Johnson has filed a Motion [40] to vacate his sentence under 28 U.S.C. § 2255 and a Motion [52] for compassionate release under the First Step Act, 18 U.S.C. § 3582 (c)(1)(A)(i). Johnson seeks such relief based on allegations of ineffective assistance of counsel and other extraordinary and compelling reasons as set forth in these Motions and in his Motion [44] to Supplement Complaint, Motion [48] to grant his motion to vacate, and in his Motion [51] to Correct Jail Time Credit. Because the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," no evidentiary hearing is warranted and Johnson's Motion [40] to vacate is denied. 28 U.S.C. § 2255(b). For these same reasons, Johnson's Motion [52] for compassionate release, Motion [44] to Supplement Complaint, Motion [48] to grant his motion to vacate, and in his Motion [51] to Correct Jail Time Credit are denied. Johnson's Motion to Compel former counsel to surrender his case file [56] is also denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

On April 13, 2021, Johnson was arrested for possession with intent to distribute methamphetamine and also for a probation violation. On May 11, 2021, Johnson was named in a two-count indictment arising from a controlled buy, which was audio and video recorded, where a confidential informant purchased 3.5 grams of methamphetamine from Johnson for $225.00. Following the controlled buy, officers executed a search warrant of the apartment where Johnson sold the methamphetamine. The officers found 62.29 grams of methamphetamine in the toilet, 30.5 dosage units of suspected Xanax, 0.83 grams of cocaine, a firearm, and a small amount of marijuana. Notably, Johnson provided a post-*Miranda* statement admitting that a female was at the apartment to purchase methamphetamine from him, and that he placed the methamphetamine in the toilet to prevent its seizure by law enforcement. Count One of the indictment charged that on or about April 12, 2021, Johnson knowingly and intentionally possessed with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C), and 18 U.S.C. § 2. Count Two charged that on or about April 12, 2021, Johnson knowingly and intentionally possessed with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B), and 18 U.S.C. § 2.

With the assistance of counsel, Johnson entered into a plea agreement with the Government. Johnson agreed to plead guilty to Count One in exchange for the Government moving to dismiss Count Two, as well as recommending Johnson be sentenced in the lower 50% of the applicable guideline range. As part of his plea agreement, Johnson expressly waived his right to appeal his conviction and his right to file for post-conviction relief, but Johnson reserved the right to raise ineffective assistance of counsel claims. The Court questioned Johnson at his change of

plea hearing to ensure he understood the waivers contained within the plea agreement, and upon finding that he did, the Court accepted Johnson's guilty plea. [43], pps. 13-14. During the change of plea hearing, the Court also asked Johnson several questions pertaining to his representation in this matter. *Id*. at pps. 9-11. The Court inquired whether he "discussed all possible defenses with your attorney," to which Jonson answered "yes, sir." *Id*. at p. 9. The Court also asked Johnson if he was "satisfied with the time that you have spent with your attorney" and if he was "satisfied with the amount of time that your attorney, Ms. Tynes, has actually spent on your case?" *Id*. at pps. 9-10. To both questions, Johnson responded, "yes, sir." *Id*. The Court also questioned whether Johnson was "fully satisfied with the counsel, the representation and the advice that has been provided to you in this case by your attorney," to which Johnson answered, "yes, sir." *Id*. at p. 10.

In preparation for sentencing, probation prepared a Presentence Investigation Report ("PSR") which was subject to objections by Johnson's counsel. The PSR assigned Johnson a total offense level of 29, which coupled with a criminal history category of V, resulted in a guideline range of 140-175 months, as calculated by probation. Johnson's attorney filed objections to the PSR arguing that the correct guideline range was 100-125 months. Specifically, Johnson's attorney objected to the two-level enhancement for possession of a firearm; objected to the two-level enhancement for importation of the methamphetamine; and also argued that Johnson should not be accountable for the cocaine found in the apartment. On the advice of counsel, Johnson withdrew his objection to the two-level importation enhancement, and in return, the Government conceded the other two objections.

Johnson's sentencing hearing was held on February 17, 2022. During sentencing, the Court questioned Johnson about his understanding of the proceedings and confirmed that Johnson agreed to the withdrawal of his objection to the two-level importation enhancement. [42], p. 5. After

resolving the objections, Johnson's total offense level was a 27 and his criminal history category remained a V. *Id.* at p. 6. Accordingly, the guideline range became 120-150 months. *Id.* Upon consideration of the Section 3553(a) factors, Johnson was sentenced to a guideline sentence range of 132-months imprisonment, followed by 3 years of supervised release and a fine of $3,000. His projected release date is September 28, 2030.[1]

The judgment was entered on February 28, 2022. Johnson did not file a direct appeal and the judgment therefore became final on March 14, 2022. Johnson timely filed his Motion to Vacate [40] on February 9, 2023.

## II. MOTION TO VACATE UNDER 28 U.S.C. § 2255 ON CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

To obtain post-conviction relief under 28 U.S.C. § 2255, Johnson must prove by a preponderance of the evidence that his sentence was imposed in violation of the United States Constitution or laws, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). The United States Supreme Court has emphasized that a collateral challenge to a conviction or sentence should not substitute for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). After a defendant has been convicted and exhausted or waived any right to appeal, "a court is entitled to presume that [he] stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Once a sentence of imprisonment has been imposed, the Court's authority to reduce or modify the sentence is limited. *United States v. Lopez*, 26 F.3d 512, 515 (5th Cir. 1994).

---

[1] https://www.bop.gov/inmateloc/ (last visited January 9, 2025).

In his Motion, Johnson asserts that his sentence is subject to collateral attack based on ineffective assistance of counsel "in violation of the Sixth Amendment and 18 U.S.C. § 3006A." [40], p. 4. The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. art. VI. The Court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must show: (1) deficient performance, in that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, in that "'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (citations omitted); *United States v. Kinsey*, 917 F.2d 181, 183 (5th Cir. 1990) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)); *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id*. at 691. In other words, the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (citation omitted). The question "is not whether counsel's actions were reasonable, but whether there is any reasonable

argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 92, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Proving prejudice requires a showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004). This is because "[a]ny error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Strickland*, 466 U.S. at 696. If the defendant fails to prove one of the elements, it is unnecessary to analyze the other. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.") (citing *Strickland*, 466 U.S. at 687). The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n. 14, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000).

Johnson asserts that his court-appointed attorney was ineffective for multiple reasons. For clarity, the Court divides his claims into the following categories: (1) the pretrial investigation; (2) the importation enhancement; (3) the purity level; and (4) the plea process. For the reasons discussed below, Johnson's ineffective assistance of counsel claims are baseless. But even if not, Johnson would have received the same sentence for all of the reasons previously identified.

## A. Pretrial investigation

The majority of Johnson's ineffective assistance of counsel claims pertain to his attorney's alleged failure "to conduct a meaningful pretrial investigation" and the "breakdown in

communication" between Johnson and his attorney. [40], p. 4. According to Johnson, his attorney failed to discover "an alibi defense," "failed to investigate plausible defenses," and failed to interview "witnesses for the defense at sentencing." *Id.* at pps. 4, 7; [40-1], p. 3. Johnson's attorney filed an affidavit in response to his allegations, explaining that she "met with Mr. Johnson throughout the course of my representation of him in this matter . . . we reviewed his constitutional rights, and the different possible outcomes should he be convicted at trial or decide to plead guilty. We reviewed discovery and discussed witnesses and possible defenses." [45], pps. 4-5.

Regarding Johnson's argument as to an alibi defense, his attorney specifically attests that "Mr. Johnson never advised me of a possible alibi." *Id.* at p. 5. But even if he had, Johnson's attorney explains that "this would not have been a fruitful defense at trial as Mr. Johnson is on video during the controlled buy and was present at the house during the execution of the search warrant." *Id.* His attorney further states that Johnson "admitted to law enforcement that he was attempting to flush methamphetamine down the toilet in an effort to prevent law enforcement from discovering the evidence." *Id.*

Finally, to the extent that Johnson claims that his attorney should have called witnesses at sentencing, to prevail on such a claim he "must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). He has not done so. Instead, Johnson merely asserts that "Counsel never attempted to interview the Government witness to dismiss the confidential informant['s] credibility." [40-1], p. 3. Apart from failing to identify which Government witness his attorney should have interviewed, he fails to identify what the witness would have testified to at sentencing. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (holding that "complaints of uncalled witnesses are not favored in federal

habeas corpus review because allegations of what the witness would have testified are largely speculative.") (citation omitted). "Given this complete lack of necessary evidence, [the defendant] cannot establish prejudice under *Strickland*." *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010).

Even if Johnson had identified witnesses and outlined the contents of such testimony, however, an attorney's decision whether to call witnesses is *typically* a matter of strategy, and therefore not subject to an ineffective assistance of counsel claim. *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) (citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983); *United States v. Harris*, 408 F.3d 186, 190 (5th Cir. 2005). Here, the decision not to call witnesses to testify was certainly strategic. Johnson's attorney explains that she "thoroughly explored a defense related to the confidential informant" and that her "investigator interviewed numerous witnesses, collected statements, and otherwise conducted a full investigation." [45], pps. 4-5. But after "discussing the witness statements and the results of the investigation with Mr. Johnson," it was he who "decided that it would be in his best interests to enter a guilty plea rather than go to trial." *Id.* Accordingly, Johnson's conclusory argument that his attorney failed to interview or use witnesses at sentencing is "insufficient to demonstrate ineffective assistance." *Gregory*, 601 F.3d at 352.

Also, Johnson cannot show "that but for more in-depth pretrial investigations he would not have pled guilty" and would have insisted on going to trial. *Bazemore v. United States*, No. 3:07-cr-312-K, 2010 WL 4860783, at *3 (N.D. Tex. Nov. 29, 2010). Therefore, Johnson cannot show actual prejudice as required under *Strickland. Carter*, 131 F.3d at 463 ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). For these reasons, Johnson's ineffective assistance of counsel claims arising out of the pre-trial investigation are without merit.

**B. The importation enhancement**

While not specifically set forth in his Motion, Johnson also argues that his attorney should have objected to the two-level importation enhancement he received at sentencing. [40-1], p. 2. The basis for this objection appears to arise out of the fact that he did not know with certainty that the methamphetamine he sold during the controlled buy was imported. But the Fifth Circuit has made it abundantly clear that actual knowledge of importation is not required. *United States v. Serfass*, 684 F.3d 548, 552 (5th Cir. 2012) ("the § 2D1.1(b)(5) sentencing enhancement applies if 'the offense involved the importation of amphetamine or methamphetamine' regardless of whether the defendant had knowledge of that importation."). And because the PSR sets forth ample evidence to demonstrate by a preponderance of the evidence that the methamphetamine was imported, Johnson's ineffective assistance of counsel claim as to the importation enhancement is denied as it is well-settled that "counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless." *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007). To be sure, this Court has been involved with numerous sentencing hearings where the Government came forward with an abundance of additional evidence of importation at the sentencing hearing. But the Government did not put on additional evidence at this hearing because Johnson waived the objection. Regardless, Johnson's objection on this ground is denied.

**C. The purity level**

Johnson asserts that he was denied effective assistance of counsel when his attorney failed to object to the purity of the methamphetamine identified in the second lab report which caused him to be "sentence[d] more harshly from the illegal purity." [40], p. 5. According to Johnson, his attorney knew the purity level identified in the report was considered a mixture rather than actual

methamphetamine. *Id.* pps. 5, 7. For these reasons, Johnson argues that his attorney should have moved to suppress the second laboratory report and her failure to do so was "unreasonable." *Id.*

To begin, the record reflects that Johnson's attorney *did* object to the purity of the methamphetamine. [35-2]. So Johnson's ineffective assistance of counsel claims on this ground are frivolous. And even though "Mr. Johnson agreed to withdraw the [purity] objection," he did so only after the Government agreed to concede "the first two objections" to the PSR, which changed the guideline sentence range from 140-175 months to 120-150 months. [45], p. 4; [47], p. 9. Accordingly, Johnson cannot prove that "counsel's performance was deficient" or prove actual prejudice as required by *Strickland*. Therefore, even if these claims were not frivolous, they would nevertheless be denied.

Johnson also argues that his attorney should have moved to suppress the second laboratory report. [40], p. 5. "To succeed on this claim, movant must demonstrate that his proposed motion was meritorious and that the outcome of his case would have been different absent the excludable evidence." *Hodges v. United States*, No. 4:12-cv-720, 2013 WL 139549, at *2 (N.D. Tex. Jan. 11, 2013) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)). Johnson has shown neither. Apart from conclusory allegations, which are insufficient to succeed on an ineffective assistance of counsel claim, he wholly fails to offer any legal or factual support for the filing of a motion to suppress. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Therefore, "the Court finds that no reasonably competent attorney could have succeeded in suppressing the evidence." *United States v. London*, No. 15-83-SDD-EWD, 2019 WL 1216736, at *5 (M.D. La. Mar. 14, 2019). Johnson's ineffective assistance of counsel claim is denied on this ground. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").

**C. Plea process**

According to Johnson, he was denied effective assistance of counsel during the plea process because he "entered into an involuntary plea without meaningful legal advice." [40], p. 7. But apart from this conclusory argument, Johnson provides no support for a finding that his guilty plea was involuntary due to the deficiencies of counsel. And "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000). Accordingly, Johnson's ineffective assistance of counsel claims arising out of the plea process are denied.

To be sure, at Johnson's change of plea hearing on November 3, 2021, the Court asked Johnson several questions pertaining to his representation in this matter. *Id.* at pps. 9-11. The Court inquired whether Johnson "discussed all possible defenses with your attorney," to which Johnson answered "yes, sir." *Id.* at p. 9. The Court also asked Johnson if he was "satisfied with the time that you have spent with your attorney" and if he was "satisfied with the amount of time that your attorney, Ms. Tynes, has actually spent on your case?" *Id.* at pps. 9-10. To both questions, Johnson responded, "yes, sir." *Id.* The Court also questioned whether Johnson was "fully satisfied with the counsel, the representation and the advice that has been provided to you in this case by your attorney," to which Johnson answered, "yes, sir." *Id.* at p. 10.

Further still, the Court also questioned Johnson about his understanding of his guilty plea and confirmed that he understood the waivers contained within the plea agreement. Upon finding that he did, the Court accepted Johnson's guilty plea. [43], pps. 13-14. In accepting his plea, the Court specifically found "that the plea of guilty to Count 1 of the indictment is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." [43], p. 28. That Johnson's plea was voluntary is further supported by his attorney's

11

affidavit, as she attests that it was *Johnson* who "decided that it would be in his best interests to enter a guilty plea rather than go to trial." [45], p. 5.

The Supreme Court has held firm declarations in open court, including a plea colloquy, carry a "strong presumption of verity." *See Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). This presumption of veracity cannot be overcome by merely making a contrary statement in a motion to vacate. *See United States v. Cervantes*, 132 F.3d 1106, 1110–11 (5th Cir. 1998). Indeed, the Supreme Court has held that "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74; *see also United States v. Palacios*, 928 F.3d 450, 456 (5th Cir. 2019) (affirming dismissal of Section 2255 petition where the record demonstrates that the guilty plea was knowing, voluntary, and made without pressure or coercion); *United States v. Diaz*, 733 F.2d 371, 375 (5th Cir. 1984) (finding that the guilty plea was not made involuntarily or under duress or coercion and explaining that "[p]lea bargaining does not render a resulting guilty plea involuntary."). Because Johnson testified under oath and in open court that he entered into his plea agreement knowingly, voluntarily, and without coercion, he has shown no ineffective assistance of counsel that rendered his plea involuntary.[2] Johnson's ineffective assistance of counsel claims arising out of the plea process are denied.

---

[2] *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [applicable] standards."); *United States v. Palacios*, 928 F.3d at 456 ("A voluntary guilty plea waives all non[-]jurisdictional defects in the proceedings against the defendant. . . . This includes all [ineffective assistance of counsel] claims expect insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.").

Johnson also argues that his Sixth Amendment rights were violated at his change of plea hearing when his attorney failed to object to the Government's position that "any factual issues regarding sentencing will be resolved by the Court under a preponderance of the evidence standard." [43], p. 12. According to Johnson, it is improper for the Court to use the preponderance of the evidence standard at sentencing. [43], p. 12. Johnson's argument, however, is without merit. The Fifth Circuit has made it abundantly clear that "[f]indings of fact for sentencing purposes need only be established by a preponderance of the evidence." *United States v. Landreneau*, 967 F.3d 443, 451 (5th Cir. 2020) (citation omitted). Johnson's ineffective assistance of counsel claim on this ground is therefore denied as it is well-settled that "counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless." *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007).

## D. Sentencing

In his final claim of ineffective assistance of counsel Johnson argues that his constitutional rights were violated because "he had no meaningful counsel at sentencing and allowed the Court to enhance the defendant under the 841(b) provision, which violated the statute for 841(a) provision." [40], p. 8. 21 U.S.C. § 841 provides, in relevant part, that:

> [I]t shall be unlawful for any person to knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance. . . . In the case of a controlled substance in schedule I or II, such person shall be sentenced to a term of imprisonment of not more than 20 years . . .

21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Johnson pled guilty to Count one of the indictment for knowingly and intentionally possessing with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Methamphetamine is a schedule II substance. Thus, Johnson's sentence of 132 months is nine

years less than the statutory maximum. Having no basis in the law, Johnson's ineffective assistance of counsel claims arising out of sentencing are frivolous.

**D. Evidentiary hearing**

A motion to vacate filed under 28 U.S.C. § 2255 does not "automatically mandate a hearing." *United States v. Hughes*, 635 F.2d 449 (5th Cir. 1981). A hearing is not required if "(1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Palacios*, 928 F.3d 450 (5th Cir. 2019). Further, this issue is reviewed for abuse of discretion and, if a hearing is denied, Johnson can only prevail if he presents "independent indicia of the likely merit of [his] allegations." *See United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008). Because Johnson has failed to produce any independent indicia of the likely merit of his allegations, as discussed fully above, he is not entitled to an evidentiary hearing. The record in this case is adequate to dispose fully and fairly of Johnson's Motion.[3]

Because Johnson has not presented any evidence justifying a hearing, and because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," an evidentiary hearing is not warranted. 28 U.S.C. § 2255(b). Johnson's Motion to Vacate under 28 U.S.C. § 2255 [40] for ineffective assistance of counsel is DENIED.

---

[3] To be sure, this Court has considered the Fifth Circuit's unpublished opinion in *Griffin* and finds it to be distinguishable. *United States v. Griffin*, No. 22-60453, 2024 WL 3174503, *3-4 (5th Cir. June 25, 2024). In *Griffin*, the defendant was sentenced as a career offender to a 262-month imprisonment term—the lower 25 percent of the Guideline range. *Id.* at *1. In his Section 2255 motion, he alleged ineffective assistance of counsel claiming that counsel did not advise him that he would be subject to the career-offender enhancement at sentencing. As a result, he argued that he could not make an informed decision about whether to plead guilty. *Id.* at *2. The Fifth Circuit found that counsel's advice arguably tainted the desirability of his plea agreement and remanded to the district court for an evidentiary hearing. *Id.* at *4. But Johnson's case is quite different, as this is not a scenario where a defendant may not have fully understood his likelihood of being found to be a career offender and the consequences that flow from that. Johnson is not entitled to an evidentiary hearing. *See also United States v. Thomas*, No. 1:23-cr-39-TBM, 2024 WL 5108451, at *9 (S.D. Miss. Dec. 13, 2024) (distinguishing *Griffin* in detail).

### III. MOTION FOR COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT

Before the Court may consider a motion for compassionate release, Johnson must have first submitted a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021) ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).

Here, it is unclear whether Johnson has exhausted his administrative remedies. Johnson states in his Motion that he submitted his request to the Warden on May 7, 2023, but he had not yet received a response from the Warden. Johnson filed this Motion on November 30, 2023, but he did not attach any evidence showing his request to the Warden. Therefore, though the record is unclear on whether he fully exhausted his administrative remedies, Johnson seemingly relies on the Warden's silence and the passage of 30 days to satisfy the statutory requirements for exhaustion, so the Court will consider the arguments made in his motion. 18 U.S.C. § 3582(c)(1)(A); *United States v. Shock*, No. 1:17-cr-144, 2024 WL 233457, at *4 (E.D. Tex. Jan. 22, 2024) (finding that the defendant ostensibly relies on the warden's silence and the passage of 30 days to satisfy the statutory requirements for exhaustion, but still nothing in the motion indicates that extraordinary and compelling reasons exist to modify the defendant's term of imprisonment).

"As a general rule, federal courts 'may not modify a term of imprisonment once it has been imposed.'" *Franco*, 973 F.3d at 467 (quoting 18 U.S.C. § 3582(c)). But that general rule is subject to a few exceptions, including a motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act of 2018, such motions could be presented only to a court

upon a request by the warden of the defendant's facility. But now a prisoner may move for reduction in sentence "on their own accord." *Shkambi*, 993 F.3d at 391.

A prisoner seeking a reduction in sentence in a motion for compassionate release must prove that (1) an "extraordinary and compelling reason" justifies the sentence reduction; (2) the relief sought is consistent with the Sentencing Commission's applicable policy statements; and (3) the Section 3553(a) sentencing factors weigh in favor of the requested relief. 18 U.S.C. § 3582(c)(1)(A). In 2023, the Sentencing Commission amended its policy statement to cover motions for sentence reduction filed by defendants and to expand the list of extraordinary and compelling reasons sufficient to support such a motion under Section 3582(c)(1)(A). U.S.S.G. § 1B1.13. The amendments became effective on November 1, 2023, and "supersede much of the case law that developed over the past several years while there was no applicable policy statement." *United States v. Campbell*, No. 1:12-cr-439, 2023 WL 7220732, at *2 (M.D.N.C. Nov. 2, 2023).

**A. Extraordinary and compelling reasons**

The amendments to the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13, provide six extraordinary and compelling reasons that may justify reducing a prison term: (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) victim of abuse, (5) other reasons, or (6) unusually long sentence. U.S.S.G. § 1B1.13. Johnson cites medical conditions and other reasons, such as his rehabilitation efforts and lack of prison misconduct, as the basis for his Motion. [52]; [53]. The Court will address each in turn.

**1. Medical Conditions**

The United States Sentencing Guidelines provides four categories of medical conditions that may satisfy the "extraordinary and compelling reasons" standard: (1) "terminal illness," (2) "serious physical or medical condition," including a "functional or cognitive impairment" or

"deteriorating physical or mental health because of the aging process, (3) "medical condition that requires long-term or specialized medical care that is not being provided, and/or (4) "defendant is housed at a correctional facility affected or at imminent risk of being affected by an ongoing outbreak of infectious disease, or an ongoing public health emergency." U.S.S.G. §1B1.13(b)(1)(A)-(D).

Johnson seeks a reduction in sentence because: (1) he has high blood pressure; (2) he has poor nutrition allegedly because of the food provided in his facility; (3) a previous car wreck resulting in loss of flexibility in his back; and (4) kidney issues that has increased protein in his urine. [52]. While Johnson may suffer from serious medical conditions, they do not qualify as "extraordinary and compelling" to justify a sentence reduction because they are manageable, and there is no proof that he cannot care for himself. *United States v. Thompson*, 984 F.3d 431, 433-34 (5th Cir. 2021) (affirming denial of compassionate release for inmate with hypertension and high cholesterol, noting that "both [conditions] are commonplace" and not "extraordinary," and finding that "it is uncertain that [the defendant] is at a significantly higher risk [of severe COVID-19 symptoms] than is the general population"); *United States v. Lindquist*, No. 4:14-CR-28 (7), 2020 WL 3513505, at *3 (E.D. Tex. Jun. 26, 2020) (compassionate release denied because the defendant's medical conditions, including obesity, multiple sclerosis, and Vitamin D deficiency, were not terminal and did not substantially diminish the defendant's ability to provide self-care).

Johnson submits that he is currently on Amlodipine, Pravastatin, Lisinopril, and Hydrochlorothiazide, which are all used to treat high blood pressure, high cholesterol, triglyceride levels, heart failure, and fluid retention.[4] Seemingly, the medication Johnson is now taking while

---

[4] Mayo Clinic, Pravastatin (Oral Route), Description and Brand Names, https://www.mayoclinic.org/drugs-supplements/pravastatin-oral-route/side-effects/drg-20068992?p=1 (last visited July 29, 2024)

imprisoned at minimum manages his high blood pressure and poor nutrition claims. He also states that he takes naproxen sodium to presumably manage pain, seemingly including any back pain he might feel from his alleged previous injuries. Other courts have found that similar conditions fail to meet the extraordinary and compelling reasons justifying a reduction in sentence. *United States v. Sells*, No. 21-40887, 2022 WL 2573036, at *1 (5th Cir. July 8, 2022) ("While [the defendant] asserts that he . . . suffers from asthma, diabetes, and hypertension, these conditions, when coupled with the fact that his medical conditions are well managed with medication and monitoring, are not extraordinary and compelling reasons warranting a reduced sentence."); *United States v. Ware*, No. 21-11275, 2022 WL 3137419, at *1 (5th Cir. Aug. 5, 2022) (affirming denial of compassionate release of inmate who suffered from obesity, type 2 diabetes, renal tubulointerstitial disease, uncontrolled hypertension, and cerebrovascular disease upon finding that the conditions were not extraordinary and compelling even in the COVID-19 era); *United States v. McCrary*, No. CR 20-134, 2023 WL 6644589, at *3 (E.D. La. Oct. 12, 2023) (denying the motion for compassionate release because defendant's medical conditions, including "type 1 diabetes, high blood pressure, severe arthritis in the back and neck, multiple sclerosis, and PTSD," were not extraordinary and compelling in that they were manageable and there was no proof defendant could not care for themself).

And as it relates to the flexibility in his back, Johnson notes that he does not require any medical equipment including a wheelchair or walker, nor does he need assistance in walking, bathing, or toileting, or that he requires assisted living. Lastly, Johnson argues that he has increased

---

Mayo Clinic, <u>Lisinopril (Oral Route), Description and Brand Names</u>, https://www.mayoclinic.org/drugs-supplements/lisinopril-oral-route/description/drg-20069129 (last visited July 29, 2024)
Mayo Clinic, <u>Amlodipine (Oral Route), Description and Brand Names</u>, https://www.mayoclinic.org/drugs-supplements/amlodipine-oral-route/description/drg-20061784 (last visited July 29, 2024)
Mayo Clinic, <u>Hydrochlorothiazide (Oral Route), Description and Brand Names</u>, https://www.mayoclinic.org/drugs-supplements/hydrochlorothiazide-oral-route/description/drg-20071841 (last visited July 29, 2024)

protein in his urine. But he does not state whether he has been diagnosed with a terminal illness resulting from this discovery, that a doctor has considered it serious, or that it requires long-term or specialized medical care that is not being provided to him. U.S.S.G. § 1B1.13(b)(1)(A)-(D).

Though Johnson alleges these medical conditions are extraordinary and compelling reasons justifying a reduction in his sentence, he has not submitted any proof that he cannot care for himself. And he has shown that these conditions are currently being managed as he is on medication specifically for the alleged ailments. Thus, these alleged medical conditions do not rise to the level of "extraordinary and compelling" as explained by the sentencing guidelines.

### 2. Other Reasons

This "catch-all" category provides that a defendant may establish "extraordinary and compelling reasons" if the defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Even if courts—rather than the BOP—can properly invoke this catch-all provision, Johnson does not present sufficiently compelling "other reasons" for release. *Thompson*, 984 F.3d at 433 n.4 (recognizing circuit split "as to whether this catch-all provision delegates only to the Bureau of Prisons—and not the courts—the task of identifying 'other reasons' justifying early release" and declining to "weigh in.").

To begin, Johnson asserts that he "has not incurred any convictions or meaningful infractions while in prison these past few years." [53], p. 2. Johnson adds that he has had "an extraordinary prison record and commendable progress in his post-sentencing rehabilitation efforts." *Id.* He also points out that he has "completed numerous classes offered by the BOP" and that "what is most remarkable about this fact is that [Johnson's] reform is entirely [] self-

motivated." *Id.* While Johnson's efforts are "a noteworthy accomplishment, [they do] not diminish the need for just, temporal punishment for the grave crime committed." *United States v. Moran*, No. 2:18-cr-34-KS, 2023 WL 2531730, at *4 (S.D. Miss. Mar. 15, 2023). "Rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. 1B1.13. And so, this Court finds that Johnson has not shown that there are "extraordinary and compelling reasons" meriting a reduction in sentence. Nevertheless, Johnson is still encouraged to continue down this positive path so that he will remain free of crime when he is released in light of his numerous prior criminal convictions.

## B. 18 U.S.C. § 3553(a) factors

Even if Johnson's conditions were "extraordinary and compelling," a district court may deny a sentence reduction if the Section 3553(a) sentencing factors outweigh any extraordinary and compelling reasons that may be present. 18 U.S.C. § 3582(c)(1)(A). The defendant must prove that the Section 3553(a) factors warrant release. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Under Section 3553(a), the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1); *United States v. Rollins*, 53 F.4th 353, 356 (5th Cir. 2022). The Court must also consider the kind of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of the defendant under the guidelines issued by the Sentencing Commission; and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(3), (4), (6). Additionally, the Court must also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, deter other criminals, and protect the public. 18 U.S.C. § 3553(a)(2)(A)-(C).

The nature and circumstances of Johnson's offense of conviction entails his possession with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine. According to his presentence investigation report, Johnson was arrested for possession with intent to distribute a controlled substance and a probation violation through the Mississippi Department of Corrections. [35], p. 4. More specifically, according to the affidavit, on April 12, 2021, the South Mississippi Metro Enforcement Team Agents utilized a cooperating individual to purchase approximately 3.5 grams of methamphetamine for $225.00 in Official Recorded Funds at a residence in Moss Point, Mississippi. [1]. This transaction was video recorded. *Id.*

And this is not Johnson's first conviction involving possession of illegal substances. Related to the history and characteristics of the defendant, out of the twelve convictions Johnson has accrued, five of them—including this current conviction—involved possession of illegal substances to some degree. [35], pps. 12-17. The remaining seven involved possession of firearms, assault, domestic violence, and one charge of contempt of court. *Id.*

On May 11, 2021, Johnson was named in a two-count indictment. Count One charged Johnson with possession with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine. Count Two charged Johnson with possession with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Johnson, on November 3, 2021, pleaded guilty to Count one of the indictment, subject to a written plea agreement and plea supplement. Johnson's total offense level was a 27 and his criminal history category remained a V. *Id.* at p. 6. The guideline imprisonment range for that offense level and criminal history category was 120-150 months. At sentencing, the Government recommended the lower 50% of the guidelines and Johnson, through his attorney, agreed. The

Court accepted the Government's recommendation and Johnson was sentenced to 132 months of imprisonment on February 17, 2022.

The Court determined that the length of Johnson's imprisonment reflects the seriousness of the crime, promotes respect for the law, and provides just punishment for the offense. This Court considered Johnson's history and characteristics, noting that Johnson graduated from high school and once held a welding license. But the Court found that despite his talents, and considering his extensive criminal history, and the nature of the offense, the sentence imposed on Johnson would deter criminal conduct, protect the public from future crimes committed by Johnson, and would promote rehabilitation. In making the same determination today, the Court recognizes, as it did at sentencing, the severity of the nature of selling a drug like methamphetamine and how it impacts communities, families, and children in this country each day. [42], p. 11.[5]

And to the extent that Johnson makes an argument as to the difference between actual methamphetamine and methamphetamine mixture and how methamphetamine is calculated under the guidelines, the Court previously considered and rejected an identical argument in *United States v. Thomas*, No. 1:23-cr-39-TBM, 2024 WL 5108451, at *9 (S.D. Miss. Dec. 13, 2024). The Court adopts and incorporates by reference its reasoning in *Thomas* here. *Id.* at *5-7. As evidenced by the information collected and published by the Sentencing Commission in June of 2024, methamphetamine offenses are extremely serious and the threat to the health and safety of the

---

[5] In fact, "[b]y fiscal year 2022, methamphetamine offenses accounted for approximately one-half of all drug trafficking offenses sentenced federally." *Thomas*, 2024 WL 5108451 at *6 (quoting United States Sentencing Commission, Methamphetamine Trafficking Offenses in the Federal Criminal Justice System, June 2024, PDF p. 6; publication pagination p. 2, www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2024/202406_Methamphetamine.pdf). And "[a]ccording data from the Centers for Disease Control and Prevention (CDC) overdose deaths from psychostimulants, comprised mostly of methamphetamine, increased 703 percent from 2011 to 2021." *Id.*

community is not improving.[6] As a result, a reduction in sentence would not reflect the seriousness of Johnson's methamphetamine offense, and would not promote respect for the law, provide just punishment for the offense, nor deter criminal conduct. Accordingly, the Court finds that a sentence reduction would be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). Indeed, as of the date of this opinion, Johnson has only served 35 months of his 132-month sentence. Even still, his projected release date by the BOP is in about five years. The Court finds that requiring Johnson to serve the rest of his sentence is necessary. 18 U.S.C. § 3553(a)(6). For these reasons, Johnson's Motion [52] for compassionate release under the First Step Act, 18 U.S.C. § 3582 (c)(1)(A)(i) is denied.

## VI. OTHER MOTIONS

Finally, Johnson has filed several other motions, including a Motion to Supplement Complaint [44], Motion to grant [48] his Motion to Vacate under 28 U.S.C. § 2255 for failure to comply, Motion to Correct Jail Time Credit [51], and a Motion to Compel [56] former counsel to surrender case file. For the reasons discussed below, these Motions are denied.

First, in Johnson's Motion to Supplement Pending Complaint [44] he seeks to add support for his Motion to Vacate [40] based on "new Fifth Circuit Authority," *United States v. Robinson*, No. 3:21-cr-14, 2022 WL 17904534, at *1 (S.D. Miss. Dec. 23, 2022).[7] [44], p. 1. The Court has

---

[6] United States Sentencing Commission, Methamphetamine Trafficking Offenses in the Federal Criminal Justice System, June 2024, PDF p. 6; publication pagination p. 2, www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2024/202406_Methamphetamine.pdf.

[7] In *Robinson*, the defendant argued that because the purity levels do not indicate a defendant's culpability, the court should not rely on the purity level distinction in the Guidelines. *United States v. Robinson*, No. 3:21-cr-14, 2022 WL 17904534, at *1 (S.D. Miss. Dec. 23, 2022). Ultimately, that court agreed and concluded that culpability should not be directly linked to purity for that particular case, and instead the focus should be on examining all the circumstances of the defendant's case as instructed in *Concepcion* and granted the defendant's motion. *Id.* at *3; *Concepcion v. United States*, 597 U.S. 481, 142 S. Ct. 2389, 213 L. Ed. 2d 731 (2022). In *Thomas*, this Court discussed and distinguished *Robinson*. For those same reasons, the Court finds *Robinson* to be distinguishable here. *Thomas*, 2024 WL 5108451 at *3. To be sure, this Court considered all relevant circumstances to see Johnson as a "whole person" before rendering a sentence. *Concepcion*, 597 U.S. at 491; [42]. Even if this Court did follow the reasoning set out in

discretion to deny the filing of supplemental authority under Rule 15 of the Federal Rules of Civil Procedure and it exercises that discretion now. FED. R. CIV. P. 15(d) ("[o]n motion and reasonable notice, ***the court may***, on just terms, permit a party to serve a supplemental pleading"). Johnson's Motion to Supplement Pending Complaint [44] is therefore denied.

Next, Johnson urges the Court to grant his Motion to Vacate [40] because his former attorney allegedly "did not comply" with the Court's Order for Counsel to respond to Johnson's Motion to Vacate within the forty-five-day window the Court allotted. [48]. Not only has Johnson failed to provide a legal or procedural basis for such a Motion but his former attorney did, in fact, respond on the forty-fifth day of the time allotted in the Court's Order. [41]. So, Johnson's Motion to grant [48] his Motion to Vacate is denied.

Johnson has also filed a Motion to Correct Jail Time Credit [51]. The Fifth Circuit has previously held that confusion sometimes arises when a defendant requests that the district court award credit for time served. *In re United States Bureau of Prisons, Dep't of Just.*, 918 F.3d 431, 439 (5th Cir. 2019). But "the district court lacks the authority to award or deny credit." *Id.* And the district court cannot simply order the Bureau of Prisons (BOP) to award credit. *Id.* Because Johnson provides no argument and presents no authority to the contrary, Johnson's Motion to Correct Jail Time Credit [51] is denied.

Also before the Court is Johnson's Motion to Compel former counsel to surrender case file [56]. But "[a]bsent a pending question of fact for which the attorney's case file is material to resolution of the question, the issue of a client's request for attorney's case file is a matter that should be resolved between the attorney and client, not in federal court." *United States v. Davis*,

---

*Robinson*, doing so would not equate to a non-guideline sentence because, based on their criminal histories, Thomas is distinctly different as a criminal defendant than the defendant in *Robinson*—whose criminal history score was zero which resulted in a criminal history category of I.

No. 4:17-cr-264-O, 2019 WL 7987814 (N.D. Tex. Nov. 27, 2019); *United States v. Trevino*, 554 F. App'x 289, 295 (5th Cir. 2014) (affirming district court's denial of motion to compel attorney to produce entire case file to movant in a Section 2255 proceeding); *United States v. Smith*, No. 1:03-cr-194, 2012 WL 6628676, *14-15 (W.D. Mich. Dec. 19, 2012) (denying motion in a Section 2255 proceeding for order to former counsel to produce items because the motion lacked sufficient factual or legal justification); *United States v. Tuggle*, 2009 WL 2020846, *2 (S.D. Ill. July 9, 2009) (denying post-judgment motion to compel attorney to provide documents from file for lack of jurisdiction); *United States v. Suarez*, No. 3-20085-01-JWL, 2007 WL 2323362, *1 (D. Kan. Aug. 9, 2007) (finding no authority to compel the attorney to provide the file). Johnson provides no evidence of a pending question of fact before this Court or any real argument as to why the case file may be relevant. Instead, he offers mere conclusory allegations of ineffective assistance of counsel—which this Court has already disposed of in this Opinion. Johnson's Motion to Compel [56] is denied.

## VII. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Johnson's Motion [40] to vacate his sentence under 28 U.S.C. § 2255 is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Johnson's Motion [52] for compassionate release under the First Step Act, 18 U.S.C. § 3582 (c)(1)(A)(i) is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Johnson's Motion [44] to Supplement Pending Complaint, Motion [48] to grant his Motion to Vacate, Motion to Correct

Jail Time Credit [51], and his Motion to Compel former counsel to surrender case file [56] are

DENIED.[8]

      This, the 30th day of January, 2025.

                                        _____
                                          **TAYLOR B. McNEEL**
                                          **UNITED STATES DISTRICT JUDGE**

---

[8] Johnson's Motion to Reduce Sentence [54] pursuant to 2023 U.S.S.C. Amendment 821 was denied via separate order this same day.